## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**SUSAN RAYE WILLIAMS**                                                       **PLAINTIFF**

**V.**                                  **NO. 4:23CV01021-JM-PSH**

**MARTIN O'MALLEY,**
**COMMISSIONER of the**
**SOCIAL SECURITY ADMINISTRATION**                          **DEFENDANT**

### RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.   Introduction:

Plaintiff, Susan Raye Williams, filed an application for Title II disability and disability insurance benefits on August 20, 2020. (Tr. at 17). She also filed an application for Title XVI supplemental security income on February 18, 2022. *Id*. In

1

both applications, Ms. Williams alleged disability beginning on July 15, 2020. *Id*. The applications were denied initially and upon reconsideration. *Id*. After conducting a hearing on April 13, 2022, an Administrative Law Judge ("ALJ") denied Ms. Williams's applications. (Tr. at 17-34). On August 23, 2023, the Appeals Council denied Ms. Williams's request for review of the hearing decision. (Tr. at 1-6). This decision stands as the final decision of the Commissioner, and Ms. Williams has requested judicial review.

For the reasons stated below, this Court should affirm the ALJ's decision and enter judgment for Defendant.

## II.    <u>The Commissioner's Decision</u>:

The ALJ found that Ms. Williams meets the insured status requirement of the Social Security Act through September 30, 2025. (Tr. at 20). The ALJ next found that Ms. Williams had not engaged in substantial gainful activity since the alleged onset date of July 15, 2020. *Id*. At Step Two, the ALJ found that Ms. Williams had the following severe impairments: spine disorder, obesity, anxiety, and depression. *Id*.

After finding that Ms. Williams's impairments did not meet or equal a Listing,[1]  the ALJ determined that Ms. Williams had the residual functional capacity

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 1.

("RFC") to perform work at the sedentary exertional level, with the following additional limitations: (1) she can no more than occasionally climb, balance, crawl kneel, stoop, and crouch; (2) she can no more than occasionally reach overhead bilaterally; (3) she is limited to simple, routine, tasks; and (4) she can respond to supervision that is simple, direct, and concrete. (Tr. at 22).

The ALJ determined that Ms. Williams was unable to perform any past relevant work. (Tr. at 27). At Step Five, the ALJ relied on the testimony of a Vocational Expert (VE) to find that, considering Ms. Williams's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, such as pastry trimmer, document clerk, and addressing clerk. (Tr. at 28-29). Thus, the ALJ found that Ms. Williams was not disabled. *Id*.

## III.  Discussion:

### A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the

record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B.   Ms. Williams's Arguments on Appeal

Ms. Williams contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that: (1) the ALJ failed to fully develop the record; (2) the ALJ erred at Step Two; (3) the ALJ failed to properly analyze Ms. Williams's subjective complaints; and (4) the RFC did not incorporate all of Ms. Williams's credible limitations.

The ALJ thoroughly discussed Ms. Williams's medical conditions. He noted her complaints of back pain, which were supported by objective findings showing thoracic disc bulges and scoliosis, as well as lumbosacral spondylosis and foraminal narrowing. (Tr. at 335, 468-472, 582-599). A consultative examiner saw Ms. Williams in August 2022. He found normal blood pressure, normal range of motion in her spine and lower extremities, normal bilateral straight-leg raise, and no signs of muscle weakness. (Tr. at 876-877). Ms. Williams could walk without an assistive device and squat and arise from a squatting position. *Id.* The examiner assessed no exertional or mental limitations.[2]

Ms. Williams also had anxiety and depression and cardiac complications. In

---

[2] Although she had the opportunity to do so, Ms. Williams's counsel did not submit any written questions to the examiner. (Tr. at 327). This undermines her contentions that the examiner did not have proper background evidence and that his opinion did not constitute substantial evidence. (Doc. No. 10 at 9).

2021 and 2022, Ms. Williams attended counseling and received psychotropic medications for her mental impairments. (Tr. at 655-710). At clinical examinations, she seemed anxious and depressed and sometimes paced and rocked back and forth, but at various visits to counseling, she generally had normal speech, memory, insight, and judgment. (Tr. at 655-656, 669-690, 701-710). Moreover, Ms. Williams's anxiety got worse when her husband got sick, and when she had to care for her elderly father.[3] (Tr. at 21-25). Finally, she did not require aggressive care like inpatient psychiatric hospitalization.

Ms. Williams's anxiety contributed to occasional high blood pressure readings and mild tachycardia, and the ALJ acknowledged this. (Tr. at 22-25, 598-603, 654-655). Ms. Williams went to the ER for tachycardia in 2021, but cardiac exams there were grossly benign. (Tr. at 24). While Ms. Williams claimed that her cardiology status precluded her from taking Ziprasidone (Geodon) and other anxiety medications, no doctor ever noted specific interactions or side effects from those medications. (Tr. at 24, 609-611, 669-673). While Ms. Williams's mental health provider discontinued Ziprasidone in 2022, without giving a reason why, she continued her on Latuda and Diazepam. (Tr. at 656, 669-673). And Ms. Williams's

---

[3] Situational stressors do not suggest an entitlement to disability benefits. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001).

6

counselor noted that when Ms. Williams changed her medications without consulting her provider her conditions worsened. (Tr. at 656). There is no objective evidence to support Ms. Williams's claim of disabling side effects from medication.

### i)   Development of the record

Ms. Williams alleges that the ALJ should have further developed the record.[4] The record contained evidence of both physical and mental impairments, and the ALJ discussed this evidence. He ordered a consultative examination, which revealed no mental or physical restrictions. (Tr. at 874-877). There is no glaring conflict in the medical record: it showed mild-to-moderate conditions with conservative treatment. The record was properly developed.

### ii)   Step Two

Ms. Williams also asserts that the ALJ erred at Step Two.[5]  She says that the

---

[4] An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the claimant and the ALJ's duty to develop is not never-ending. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011).

[5] Step Two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id*. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). The claimant has the burden of proving that an impairment is severe. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). If the impairment would have no more than a minimal effect on the claimant's ability to do work, then it does not satisfy the requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

ALJ should have found bipolar disorder and her heart condition to be severe impairments. The ALJ discussed Ms. William's psychiatric symptoms but did not rule bipolar disorder to be severe. But he considered and cited to records containing mentions of bipolar disorder; these records also listed medications taken for both anxiety and bipolar disorder. (Tr. at 23-24, 652-690). Moreover, the ALJ discussed the mental status examinations and the lack of any inpatient hospitalization for any mental disorder. (Tr. at 23-25). The ALJ was not required to discuss every shred of evidence or every diagnosis in the record. When he labeled anxiety a severe impairment at Step Two, and when he crafted an RFC for simple work based thereon, he covered limitations from Ms. Williams's mental illness.

Additionally, the ALJ discussed the cardiac issues as outline above. (Tr. at 23-25). With grossly normal cardiac exams, and conservative treatment for cardiac issues, the ALJ was right to discount this as a severe impairment.

### iii)   Subjective complaints

Next, Ms. Williams argues that the ALJ did not properly consider her subjective complaints.[6]  The ALJ discussed the extent and nature of Ms. Williams's

---

[6] When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the

pain, the objective findings, the clinical examinations, her course of treatment, her medications, and her ability to do daily activities. (Tr. at 21-26). Ms. Williams said she could do things like care for her teenage son and her ailing father, shop in stores, prepare simple meals, do chores, drive, play video games, and watch TV.[7] (Tr. at 21, 255-271). Ms. Williams's subjective complaints of disabling conditions were not substantiated by the record evidence.

### iv)   RFC

Finally, Ms. Williams contends that the RFC did not fully incorporate her limitations.[8] The RFC placed physical restrictions on Ms. Williams consistent with the evidence related to back problems. He likewise accounted for all of her mental impairments with a limitation to simple work. She did not show that more

---

claimant's functional restrictions. See *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

[7] Such daily activities are inconsistent with her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[8] A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater,* 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

restrictions were warranted. The benign medical record and lack of aggressive treatment, combined with Ms. Williams's ability to perform a wide variety of activities, demonstrated that the RFC was appropriate.

## IV.  **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Ms. Williams was not disabled. The record was fully developed, the ALJ fulfilled his duty at Step Two, he properly evaluated Ms. Williams's subjective complaints, and the RFC incorporated all credible limitations. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 25th day of June, 2024.

_____
UNITED STATES MAGISTRATE JUDGE